[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15178

_____

D. C. Docket No. 07-00058-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY ALEXANDER BRIDGEWATER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 24, 2009)

Before WILSON, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

Anthony Alexander Bridgewater appeals the district court's denial of his

motion to suppress evidence seized during his arrest and his mandatory life sentence imposed based on two prior felony drug offenses. For the reasons below, we conclude that the district court did not err by denying Bridgewater's motion to suppress. Thus, we affirm his convictions. We vacate his sentence, however, because the district court failed to require that the government prove by a preponderance of the evidence that he qualified for a mandatory life sentence.

## I. BACKGROUND

### A. *Arrest and Trial*

The police suspected that Bridgewater was involved in a conspiracy to sell drugs because of his numerous cell phone conversations with other suspected drug dealers and his prior convictions for selling drugs. On March 26, 2007, police officers observed Bridgewater driving a rented white Chevrolet Impala. They then saw the Impala parked in front of what they believed to be Bridgewater's house.

The police officers arrived early in the morning on April 5, 2007 at that address to execute a state arrest warrant for Bridgewater. They again saw the Impala parked in the driveway. They saw no one entering or exiting during the 1.5 hours they spent observing the house. Nor did they observe any movement within the house. The officers knocked on the door several times and rang the doorbell but received no response. Nor did they receive a response when they called

Bridgewater's cell phone.

Officer Jeffery Watkins went to the rear of the house; opened the sliding glass door; saw a certificate with Bridgewater's name on it; and detected marijuana odor. He called for backup. He and the other officers then forced entry into the house at about 7:00 A.M.

After being arrested, Bridgewater consented to a search of his house. He was tried and convicted of conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana and 5 kilograms or more of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), and 846 (Count 1); possession with intent to distribute 5 kilograms or more of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 18 U.S.C. § 2 (Count 2); possession with intent to distribute 100 kilograms or more of marijuana, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 18 U.S.C. § 2 (Count 3); and, possession of a firearm by a convicted felon, pursuant to 18 U.S.C. § 922(g)(1) (Count 4).

B.    *Sentencing*

At Bridgewater's sentencing hearing, the parties agreed that, on December 10, 1992, Bridgewater made two sales of cocaine base 36 minutes apart to an undercover officer. The probation officer concluded that the mandatory life

3

sentence provided by 21 U.S.C. § 841(b)(1)(A)(viii) did not apply because the two sales constituted one prior felony drug conviction.

The district court found, however, that the two sales constituted two separate qualifying convictions. The court accordingly sentenced Bridgewater to the mandatory minimum sentence of life imprisonment for Counts 1 and 2 and 438 months of imprisonment on Counts 3 and 4.

Bridgewater appeals his convictions and life sentence.

## II. DISCUSSION

We first discuss Bridgewater's motion to suppress. Then we discuss his life sentence.

*A.*    *Bridgewater's Motion to Suppress*

Bridgewater challenges his convictions, arguing that the district court erred by denying his motion to suppress. He argues that the court clearly erred by finding that the officers executing the arrest warrant had a reasonable belief that he was inside his house at the time of entry. We disagree.

"In reviewing a district court's ruling on a motion to suppress evidence, we review factual findings for clear error and the court's application of law to those facts *de novo.*" *United States v. Goddard*, 312 F.3d 1360, 1362 (11th Cir. 2002). "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause

implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). "*Payton* thus requires a two-part inquiry: first, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have 'reason to believe' that the suspect is within the dwelling." *United States v. Magluta*, 44 F.3d 1530, 1533 (11th Cir. 1995). "[O]fficers may presume that a person is at home at certain times of the day — a presumption which can be rebutted by contrary evidence regarding the suspect's known schedule." *Id.* at 1535.

Bridgewater concedes that only the second *Payton* inquiry is at issue here. He argues that the only evidence that the officers had that he was inside his house was that a car he was seen driving once a week earlier, but not positively identified as belonging to him, was parked outside the house. He notes that the officers repeatedly knocked on the door and rang the doorbell, called his cell phone, and observed his home for an hour and a half without detecting any activity. This evidence, he argues, rebuts any presumption that he was inside the house.

The officers reasonably believed, however, that Bridgewater was inside his home at the time of their entry. First, the Impala was parked in front of Bridgewater's house on the morning of the arrest. The Impala's presence suggests

5

that Bridgewater was inside the house. *See United States v. Beck*, 729 F.2d 1329, 1331–32 (11th Cir. 1984) (per curiam). Second, Officer Watkins arrived at Bridgewater's house at 7:00 A.M. Early morning police entry weighs in favor of finding that the officers reasonably believed that Bridgewater was inside the house. *Id.*

Finally, just because Officer Watkins observed no movement within the house after he knocked or while he waited for backup officers to arrive did not mean that the officers could not reasonably believe that Bridgewater was inside. The officers could reasonably expect Bridgewater to hide inside if he could. *Id.* at 1332. Therefore, the district court did not clearly err by finding that, at the time of entry, the officers reasonably believed that Bridgewater was inside the house or by denying his motion to suppress.

We affirm Bridgewater's convictions.

B. *Bridgewater's Life Sentence*

"Because the question of whether prior convictions were related or unrelated for purposes of section 841(b)(1)(A) involves a factual inquiry, we review the district court's decision for clear error." *United States v. Rice*, 43 F.3d 601, 606 (11th Cir. 1995). Section 841(b)(1)(A)(viii) provides a mandatory life term of imprisonment for a defendant who was previously convicted of two or more felony

drug offenses. 21 U.S.C. § 841(b)(1)(A)(viii). "[I]f the prior convictions resulted from acts forming a single criminal episode, then they should be treated as a single conviction for sentence enhancement under section 841(b)(1)(A)." *Rice*, 43 F.3d at 605. Treating them as such "is consistent with our interpretations of other sentencing enhancement statutes, particularly . . . 18 U.S.C. § 924(e)," the Armed Career Criminal Act ("ACCA"). *Id.* at 605 n.7.

In the context of ACCA, "the 'successful' completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first . . . . [S]o long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes . . . ." *United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998). The crimes are successive if there were a "successful completion of one crime plus a subsequent decision to commit another crime." *Id.*

The district court determines whether the offenses are successive or simultaneous by "examin[ing] the underlying facts." *United States v. Richardson,* 230 F.3d 1297, 1300 (11th Cir. 2000) (per curiam). "The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. It is the district court's duty to ensure that the Government carries this burden by establishing a sufficient and reliable basis for

its request for an enhancement." *United States v. Askew*, 193 F.3d 1181, 1183

(11th Cir. 1999) (citations omitted).  That burden

> does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process. . . . The standard signifies a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.

*United States v. Lawrence*, 47 F.3d 1559, 1567 (11th Cir. 1995) (brackets omitted)

(quoting *United States v. Wise*, 976 F.2d 393, 402–03 (8th Cir. 1992)).

The district court's factual findings based on an incorrect burden of proof

are not protected by clear error review.  *See Inwood Labs. v. Ives Labs.*, 456 U.S.

844, 855 n.15 (1982) (citing *United States v. Singer Mfg. Co.*, 374 U.S. 174, 194

n.9 (1963) ("[I]f the trial court bases its findings upon a mistaken impression of

applicable legal principles, the reviewing court is not bound by the clearly

erroneous standard.").

At his sentencing hearing, Bridgewater asserted that his two cocaine sales,

which occurred 36 minutes apart, should be treated as one criminal episode.  The

district court disagreed.  It found that the two cocaine sales were distinct in time

and that Bridgewater had a meaningful opportunity to decide consciously not to make the second sale.

In so finding, however, the district court overlooked the applicable burden of proof. It failed to hold the government to its burden to prove by a preponderance of the evidence that the two sales were successive rather than simultaneous. The government failed to present at the sentencing hearing any evidence regarding what occurred during the 36-minute interval between Bridgewater's two cocaine sales. Instead, the government primarily relied on our prior decisions to argue that, in those 36 minutes, Bridgewater had a meaningful opportunity to cease and desist. *See Pope*, 132 F.3d at 689–90.

The evidence presented at the sentencing hearing merely indicated that both sales involved the same substance, officer, and location. Without any evidence of what occurred during the 36 minutes between the sales, we cannot determine whether the sales were successive or simultaneous. The district court agreed with the government that Bridgewater could have decided in that interval not to make the second sale. But it is equally plausible, based on the minimal evidence presented, that the undercover officer never left Bridgewater's presence between the two cocaine sales. It is also equally plausible that, at the time of the first sale, Bridgewater did not have the full amount of cocaine requested by the undercover

officer and that he returned 36 minutes later with the remaining amount. Thus, the government has not met its burden to prove by a preponderance of the evidence that Bridgewater qualified for a life sentence under 21 U.S.C. § 841(b)(1)(A)(viii) based on two successive cocaine sales.

### III. CONCLUSION

The district court did not clearly err by determining that at the time of entry, the officers reasonably believed that Bridgewater was inside his house. It erred, however, by not holding the government to its burden to prove by a preponderance of the evidence that Bridgewater qualified for a life sentence under 21 U.S.C. § 841(b)(1)(A)(viii). Accordingly, we **AFFIRM** Bridgewater's convictions, **VACATE** his life sentence, and **REMAND** for proceedings consistent with this opinion.