[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12618
Non-Argument Calendar
_____

D.C. Docket No. 5:08-cr-00008-MTT-CWH-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUENTON HART,
a.k.a. Q-Ball,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(January 15, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Quenton Hart appeals the revocation of his supervised release and the resulting imposition of his 21-month sentence.  We affirm.

## I. BACKGROUND

In November 2008, Hart pled guilty to conspiracy to make false statements in connection with firearm purchases, in violation of 18 U.S.C. §§ 371 and 922(a)(6).  The district judge sentenced Hart to 18 months of imprisonment, followed by 3 years of supervised release.  The supervised release included a condition that Hart was not to commit another federal, state, or local crime.

Hart's term of supervision commenced in April 2010.  In October 2012, however, Hart's probation officer filed a petition to revoke Hart's supervised release and asserted Hart had violated the conditions of his supervision by failing to: (1) submit written monthly reports from June through September 2012 (Violation 1); (2) notify his probation officer within 72 hours of being arrested or questioned by law enforcement officers (Violation 2); and (3) refrain from violating the law (Violation 3).  The petition states Hart committed the offenses of robbery and aggravated battery on June 4, 2012, and was arrested for the offenses on June 18, 2012.

At his revocation hearing, Hart admitted he had failed to submit a report in June 2012 and admitted he had failed to notify his probation officer within 72 hours of being arrested or questioned by law enforcement officers.  He contested

2

the failure to submit reports between July and September 2012 and contested all of Violation 3.

At the hearing, the government presented two witnesses: Hart's probation officer and Kim Jones. Hart's probation officer testified Hart did not submit monthly reports from June through September 2012. Jones testified regarding Hart's alleged robbery and aggravated battery. Jones testified Hart and another man had stolen her iPad and had beaten her on June 4, 2012. As a result of the attack, Jones suffered a fractured occipital bone and nose, a cracked jaw and tooth, and swelling that lasted for months.

Hart testified at the probation hearing that he was at a friend's house the entire day of June 4, 2012. He admitted going to Jones's home previously to socialize, but he denied going to her house on June 4, 2012, and he denied assaulting her. Although he was right-handed, Hart testified he wore a brace on his right wrist, because of surgery for tendinitis.

The district judge found the government had established Hart committed the offenses of robbery and aggravated battery on June 4, 2012, by preponderance of the evidence. The judge found Jones's testimony to be more credible than Hart's testimony. The judge also found Hart had failed to file a monthly report in June 2012 and to notify his probation officer he had been arrested. The judge revoked Hart's supervised release and sentenced him to 21 months of imprisonment. On

3

appeal, Hart argues there was insufficient evidence to show he violated a condition of his supervised release by committing the offenses of robbery and aggravated battery.

## II. DISCUSSION

Hart argues the government failed to establish by a preponderance of the evidence that he committed the Georgia offenses of robbery and aggravated battery while on supervised release. Specifically, he asserts (1) the victim's uncorroborated testimony during his revocation hearing lacked credibility, and (2) his own testimony that he was not a party to the incident was corroborated by his limited use of his wrist.

We review a district judge's revocation of supervised release for abuse of discretion, *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (per curiam), and factual findings for clear error, *United States v. Moore*, 443 F.3d 790, 793 (11th Cir. 2006). Upon finding by a preponderance of the evidence that a defendant violated a condition of supervised release, a district judge may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release.[1] 18 U.S.C. § 3583(e)(3); *Cunningham*, 607 F.3d at 1266. Under the preponderance-of-the-evidence standard, the government must

---

[1] A violation of the condition barring the defendant from committing another crime may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. U.S.S.G. § 7B1.1, cmt. n.1.

convince the judge the existence of a fact is more probable than its nonexistence, by presenting reliable and specific evidence. *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir.), *cert. denied*, 133 S. Ct. 629 (2012).

We give substantial deference to the factfinder in reaching credibility determinations. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003). The resolution of a credibility dispute will not be reversed for clear error unless the testimony is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Moreover, when a defendant testifies, the factfinder may disbelieve his testimony, which may be considered as substantive evidence of his guilt, along with other evidence. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). When a defendant chooses to testify, he runs the risk the factfinder might conclude the opposite of his testimony is true. *See id.*

The district judge did not abuse his discretion when he concluded Hart committed the offenses of robbery and aggravated battery. *See Cunningham*, 607 F.3d at 1266; *Moore*, 443 F.3d at 793. Hart's supervision was conditioned upon his abstention from committing a federal, state, or local crime. 18 U.S.C. § 3583(d). Under Georgia law, "[a] person commits robbery when, with intent to commit theft, he takes property of another from the person or the immediate

5

presence of another[] by use of force." O.C.G.A. § 16-8-40(a)(1). A person commits aggravated battery under Georgia law when he "maliciously causes bodily harm to another . . . by seriously disfiguring his body or a member thereof." *Id.* § 16-5-24(a).

During Hart's revocation hearing, Jones testified Hart and another man had beaten her, resulting in broken bones. Thereafter, the men drove away with her iPad. This testimony was sufficient to establish the elements of robbery and aggravated battery under Georgia law, and Hart does not argue otherwise on appeal. *See* O.C.G.A. §§ 16-5-24(a), 16-8-40(a)(1).

Although Jones admitted she did not implicate Hart immediately in the attack, the district judge was entitled to credit her testimony that she did so out of fear of Hart's returning to her house. Jones's testified that (1) Hart told her "to keep [her] mouth shut" and that she "better not tell anybody about what happened," Revocation Hr'g Tr. at 18, and (2) she moved approximately one week after the attack when she identified Hart as her assailant. *See Ramirez-Chilel*, 289 F.3d at 749; *see also Almedina*, 686 F.3d at 1315 (explaining, where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous). Hart has cited no authority for his suggestion that the government was required to introduce additional evidence to corroborate this testimony.

6

Jones's testimony, that no more than 30 minutes elapsed between when she began to chase the second assailant approximately one-fourth of a mile and, when she returned to her home, is not inherently incredible, particularly in light of her immediate clarification that "[i]t was really quick." Revocation Hr'g Tr. at 24. *See Ramirez-Chilel*, 289 F.3d at 749. Similarly, Hart's testimony that his right wrist was injured, which he did not corroborate with any medical evidence, did not render Jones's testimony inherently incredible. Hart's testimony, even if credited, did not foreclose the judge from concluding either (1) Hart had hit Jones with his right hand in a way that did not result in an injury to him, or (2) he had hit Jones with his left hand. *See Ramirez-Chilel*, 289 F.3d at 749. Because Hart testified, the district judge was entitled to conclude the opposite of Hart's testimony was true and to use that conclusion, along with the other evidence, as substantive evidence of Hart's guilt. *See Brown*, 53 F.3d at 314. Consequently, the evidence was sufficient for the judge to find by a preponderance of the evidence Hart had violated the condition of his supervised release that he refrain from committing another crime.

**AFFIRMED.**